UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHILLIP MABE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CENTERSTATE BANK CORPORATION, CHARLES W. MCPHERSON, JAMES H. BINGHAM, MICHAEL J. BROWN SR., CHARLES DENNIS CARLTON, MICHAEL F. CIFERRI, JOHN C. CORBETT, JODY JEAN DREYER, GRIFFIN A. GREENE, JOHN H. HOLCOMB III, RICHARD MURRAY IV, GEORGE TIERSO NUNEZ, THOMAS E. OAKLEY, G. RUFFNER PAGE JR., WILLIAM KNOX POU JR., DANIEL R. RICHEY, DAVID G. SALYERS, JOSHUA A. SNIVELY SR., and MARK W. THOMPSON,<br><br>　　　　Defendants. | Case No.:<br><br>**JURY TRIAL DEMANDED**<br><br>**COMPLAINT FOR VIOLATIONS OF**<br>**FEDERAL SECURITIES LAWS** |

　　Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## BACKGROUND

　　1.　　This action concerns a proposed transaction announced on January 27, 2020 pursuant to which CenterState Bank Corporation ("CenterState" or "the Company") will be acquired by South State Corporation ("South State").

　　2.　　On January 25, 2020, CenterState's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement"), pursuant to which CenterState shareholders will receive 0.3001 shares of South State

common stock for each share of CenterState common stock they own ("Merger Consideration"). Although the number of shares of South State common stock that CenterState shareholders will receive is fixed, the market value of the Merger Consideration will fluctuate with the market price of South State common stock and will not be known at the time CenterState shareholders vote to approve the Merger Agreement.  Based on the closing price of Southern State common stock on the NASDAQ on January 24, 2020, the last trading day before the public announcement of the parties entering into the Merger Agreement, the Merger Consideration represented approximately $25.66 in value for each share of CenterState common stock. By comparison, based on the closing price of South State common stock on the NASDAQ on March 26, 2020, the Merger Consideration represented approximately $18.53 in value for each share of CenterState common stock.

3.      On March 16, 2020, in order to convince CenterState's stockholders to vote in favor of the Proposed Transaction, Defendants filed a materially incomplete and misleading preliminary S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") and sent same to stockholders of CenterState.

4.      The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.  Accordingly, Plaintiff alleges herein that Defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

5.      In addition, a special meeting of CenterState's stockholders will be held to vote on the Proposed Transaction (the "Stockholder Vote").  It is therefore imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the Stockholder Vote so CenterState stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

## JURISDICTION & VENUE

6. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7. This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District. Additionally, the Company's common stock trades on the NASDAQ, which is headquartered in this District.

## THE PARTIES

9. Plaintiff is, and has been continuously throughout all times relevant hereto, an owner of CenterState common stock.

10. Defendant CenterState is a company organized under the laws of Florida and a party to the Merger Agreement. CenterState common stock is traded on the NASDAQ under the ticker symbol "CSFL."

11. Defendant Ernest S. Pinner is Chairman of the Board of the Company

12. Charles W. McPherson is a director of the Company.

13. James H. Bingham is a director of the Company.

14. Michael J. Brown Sr. is a director of the Company.

15. Charles Dennis Carlton is a director of the Company.

16. Michael F. Ciferri is a director of the Company.

17. John C. Corbett is a director of the Company.

18. Jody Jean Dreyer is a director of the Company.

19. Griffin A. Greene is a director of the Company.

20. John H. Holcomb III is a director of the Company.

21. Richard Murray IV is a director of the Company.

22. George Tierso Nunez is a director of the Company.

23. Thomas E. Oakley is a director of the Company.

24. G. Ruffner Page Jr. is a director of the Company.

25. William Knox Pou Jr. is a director of the Company.

26. Daniel R. Richey is a director of the Company.

27. David G. Salyers is a director of the Company.

28. Joshua A. Snively Sr. is a director of the Company.

29. Mark W. Thompson is a director of the Company.

## FACTS

30. CenterState is a financial holding company, incorporated under the laws of the state of Florida, that owns all of the outstanding shares of CenterState Bank. Headquartered in Winter Haven, CenterState provides traditional retail, commercial, mortgage, wealth management and small

business services throughout CenterState Bank's branch network in Florida, Georgia and Alabama, and customer relationships in neighboring states. CenterState Bank also has a national footprint, serving clients coast to coast through its correspondent banking division. As of December 31, 2019, CenterState had total consolidated assets of $17.1 billion, total consolidated loans of $12.0 billion, total consolidated deposits of $13.1 billion, and total consolidated shareholders' equity of $2.9 billion.

31. South State is a South Carolina corporation that is a bank holding company registered with the Board of Governors of the Federal Reserve System under the Bank Holding Company Act of 1956, as amended. South State provides a wide range of banking services and products to its customers through its wholly-owned bank subsidiary, South State Bank, a South Carolina banking corporation that opened for business in 1934. South State does not engage in any significant operations other than the ownership of its banking subsidiary. South State Bank provides a full range of retail and commercial banking services, mortgage lending services, trust and wealth management, and consumer loans through financial centers in South Carolina, North Carolina, Georgia and Virginia. As of December 31, 2019, South State had approximately $15.9 billion in assets, $11.3 billion in loans, $12.2 billion in deposits, $2.4 billion in shareholders' equity, and a market capitalization of approximately $2.9 billion.

32. On January 25, 2020, CenterState's Board caused the Company to enter into the Merger Agreement.

33. The Merger Agreement provides that CenterState has agreed with South State, a South Carolina corporation, among other things and subject to terms and conditions set forth therein, that CenterState shall merge with and into South State, with South State surviving the Merger.

34. At the Effective Time (as defined in the Merger Agreement), and as a result of the

Merger:

> Each share of the common stock, par value $0.01 per share, of CenterState issued and outstanding immediately prior to the Effective Time (the "CenterState Common Stock"), except for shares of CenterState Common Stock owned by CenterState or South State (in each case other than shares of CenterState Common Stock (i) held in trust accounts, managed accounts, mutual funds and the like, or otherwise held in a fiduciary or agency capacity that are beneficially owned by third parties or (ii) held, directly or indirectly, by CenterState or South State in respect of debts previously contracted), shall be converted into the right to receive 0.3001 shares (the "Exchange Ratio" and such shares the "Merger Consideration") of the common stock, par value $2.50 per share, of South State (the "South State Common Stock").

35.     The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Proposed Transaction.

36.     It is therefore imperative that the Company common stockholders receive the material information that Defendants have omitted from the Registration Statement so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

37.     Section 6.13 of the Merger Agreement provides for a no solicitation clause that prevents CenterState from soliciting alternative proposals and constrains its ability to negotiate with potential buyers:

> a)   Each party agrees that it will not, and will cause each of its Subsidiaries and its and their respective officers, directors, employees, agents, advisors and representatives (collectively, "Representatives") not to, directly or indirectly, (i) initiate, solicit, knowingly encourage or knowingly facilitate any inquiries or proposals with respect to any Acquisition Proposal, (ii) engage or participate in any negotiations with any person concerning any Acquisition Proposal, (iii) provide any confidential or nonpublic information or data to, have or participate in any discussions with any person relating to any Acquisition Proposal or (iv) unless this Agreement has been terminated in accordance with its terms, approve or enter into any term sheet, letter of intent, commitment, memorandum of understanding, agreement in principle, acquisition agreement, merger agreement or other agreement (whether written or oral, binding or nonbinding) (other than a confidentiality agreement referred to and entered into in accordance with this Section 6.13) in connection with or relating to any Acquisition Proposal. Notwithstanding

the foregoing, in the event that after the date of this Agreement and prior to the receipt of the Requisite South State Vote, in the case or South State, or the Requisite CenterState Vote, in the case of CenterState, a party receives an unsolicited bona fide written Acquisition Proposal that did not result from or arise in connection with a breach of this Section 6.13(a), such party may, and may permit its Subsidiaries and its and its Subsidiaries' Representatives to, furnish or cause to be furnished confidential or nonpublic information or data and participate in such negotiations or discussions with the person making the Acquisition Proposal if the Board of Directors of such party concludes in good faith (after receiving the advice of its outside counsel, and with respect to financial matters, its financial advisors) that failure to take such actions would be more likely than not to result in a violation of its fiduciary duties under applicable law; provided, that, prior to furnishing any confidential or nonpublic information permitted to be provided pursuant to this sentence, such party shall have entered into a confidentiality agreement with the person making such Acquisition Proposal on terms no less favorable to it than the Confidentiality Agreement, which confidentiality agreement shall not provide such person with any exclusive right to negotiate with such party. Each party will, and will cause its Representatives to, immediately cease and cause to be terminated any activities, discussions or negotiations conducted before the date of this Agreement with any person other than CenterState or South State, as applicable, with respect to any Acquisition Proposal. Each party will promptly (within twenty-four (24) hours) advise the other party following receipt of any Acquisition Proposal or any inquiry which could reasonably be expected to lead to an Acquisition Proposal, and the substance thereof (including the terms and conditions of and the identity of the person making such inquiry or Acquisition Proposal), will provide the other party with an unredacted copy of any such Acquisition Proposal and any draft agreements, proposals or other materials received in connection with any such inquiry or Acquisition Proposal, and will keep the other party apprised of any related developments, discussions and negotiations on a current basis, including any amendments to or revisions of the terms of such inquiry or Acquisition Proposal. Each party shall use its reasonable best efforts to enforce any existing confidentiality or standstill agreements to which it or any of its Subsidiaries is a party in accordance with the terms thereof. As used in this Agreement, "Acquisition Proposal" shall mean, with respect to South State or CenterState, as applicable, other than the transactions contemplated by this Agreement, any offer, proposal or inquiry relating to, or any third-party indication of interest in, (i) any acquisition or purchase, direct or indirect, of twenty-five percent (25%) or more of the consolidated assets of a party and its Subsidiaries or twenty-five percent (25%) or more of any class of equity or voting securities of a party or its Subsidiaries whose assets, individually or in the aggregate, constitute twenty-five percent (25%) or more of the consolidated assets of the party, (ii) any tender offer (including a self-tender offer) or exchange offer that, if consummated, would result in such third party beneficially owning twenty-five percent (25%) or more of

any class of equity or voting securities of a party or its Subsidiaries whose assets, individually or in the aggregate, constitute twenty-five percent (25%) or more of the consolidated assets of the party, or (iii) a merger, consolidation, share exchange, business combination, reorganization, recapitalization, liquidation, dissolution or other similar transaction involving a party or its Subsidiaries whose assets, individually or in the aggregate, constitute twenty-five percent (25%) or more of the consolidated assets of the party.

38. In addition, Section 8.2(b) of the Merger Agreement requires CenterState to pay a $120,000,000.00 "termination fee" to South State in the event this agreement is terminated by CenterState and improperly constrains the Company from obtaining a superior offer.

39. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

40. As alleged herein, the Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

41. The Registration Statement omits material information regarding the analyses performed by the Company's and South State's financial advisors Keefe, Bruyette & Woods, Inc. ("KBW") and Piper Sandler & Co. ("Piper"), respectively, in connection with the Proposed Transaction.

42. With respect to KBW's *South State and CenterState Selected Companies Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed by KBW in the analysis. This information must be disclosed to make the Registration Statement not materially misleading to CenterState stockholders and provide stockholders with full and relevant information in considering how to vote.

43. With respect to KBW's *Pro Forma Selected Companies Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed by KBW in the analysis. This information must be disclosed to make the Registration Statement not

materially misleading to CenterState stockholders and provide stockholders with full and relevant information in considering how to vote.

44.     With respect to KBW's *Selected Transactions Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for the transactions observed by KBW in the analysis. This information must be disclosed to make the Registration Statement not materially misleading to CenterState stockholders and provide stockholders with full and relevant information in considering how to vote.

45.     With respect to KBW's *Financial Impact Analysis*, the Registration Statement fails to disclose (i) the closing balance sheet estimates as of June 30, 2020 for South State and CenterState, (ii) the extent to which the Proposed Transaction could be accretive to South State's estimated 2020 EPS, estimated 2021 EPS and estimated 2022 EPS, (iii) the extent to which the Proposed Transaction could be dilutive to South State's estimated tangible book value per share as of June 30, 2020, (iv) the extent to which the Proposed Transaction could be accretive relative to CenterState's estimated 2022 EPS, and (v) the extent to which the Proposed Transaction could lower South State's tangible common equity to tangible assets ratio, Leverage Ratio, Common Equity Tier 1 Ratio, Tier 1 Capital Ratio and Total Risk-based Capital Ratio as of June 30, 2020. This information must be disclosed to make the Registration Statement not materially misleading to CenterState stockholders and provide stockholders with full and relevant information in considering how to vote.

46.     With respect to KBW's *Discounted Cash Flow Analysis for South State*, the Registration Statement fails to disclose (i) the individual inputs and assumptions underlying the range of discount rates of 7.0% to 11.0%, (ii) the estimated excess cash flows that South State could generate over the period from January 1, 2020 through December 31, 2024 as a stand-alone

company, (iii) South State's terminal value, and (iv) KBW's basis for applying a range of 11.0x to 15.0x South State's estimated 2025 earnings. This information must be disclosed to make the Registration Statement not materially misleading to CenterState stockholders and provide stockholders with full and relevant information in considering how to vote.

47. With respect to KBW's *Discounted Cash Flow Analysis for the Company*, the Registration Statement fails to disclose (i) the individual inputs and assumptions underlying the range of discount rates of 7.0% to 11.0%, (ii) the estimated excess cash flows that CenterState could generate over the period from January 1, 2020 through December 31, 2024 as a stand-alone company, (iii) CenterState's terminal value, and (iv) KBW's basis for applying a range of 11.0x to 15.0x CenterState's estimated 2025 earnings. This information must be disclosed to make the Registration Statement not materially misleading to CenterState stockholders and provide stockholders with full and relevant information in considering how to vote.

48. With respect to KBW's *Pro Forma Discounted Cash Flow Analysis for the Company*, the Registration Statement fails to disclose (i) the individual inputs and assumptions underlying the range of discount rates of 6.5% to 10.5%, (ii) the estimated excess cash flows that the pro forma combined entity could generate over the period from July 1, 2020 through December 31, 2024, (iii) the pro forma combined entity's terminal value, and (iv) KBW's basis for applying a range of 11.0x to 15.0x to the pro forma combined entity's estimated 2025 earnings. This information must be disclosed to make the Registration Statement not materially misleading to CenterState stockholders and provide stockholders with full and relevant information in considering how to vote.

49. With respect to Piper's *Comparable Company Analyses* fails to disclose the individual multiples and metrics for the companies observed by Piper in the analysis. This

information must be disclosed to make the Registration Statement not materially misleading to CenterState stockholders and provide stockholders with full and relevant information in considering how to vote.

50. With respect to Piper's *Precedent Transactions Analysis* fails to disclose the individual multiples and metrics for the transactions observed by Piper in the analysis. This information must be disclosed to make the Registration Statement not materially misleading to CenterState stockholders and provide stockholders with full and relevant information in considering how to vote.

51. With respect to Piper's *Net Present Value Analyses*, the Registration Statement fails to disclose (i) South State's terminal value, (ii) Piper's basis for applying earnings multiples ranging from 11.0x to 16.0x, and (iii) the individual inputs and assumptions underlying the range of discount rates of 8.0% to 11.0%. This information must be disclosed to make the Registration Statement not materially misleading to CenterState stockholders and provide stockholders with full and relevant information in considering how to vote.

52. With respect to Piper's *Pro Forma Transaction Analysis*, the Registration Statement fails to disclose (i) Piper's assumption relating to transaction expenses, purchase accounting adjustments and cost synergies, certain adjustments for CECL accounting standards and the repayment of a certain amount of CenterState's outstanding subordinated debt in the years ending December 31, 2020 through December 31, 2023, (ii) the extent to which the Proposed Transaction could be accretive to South State's estimated earnings per share in the years ending December 31, 2020 through December 31, 2023, and (iii) the extent to which the Proposed Transaction could be dilutive to South State's estimated tangible book value per share at June 30, 2020 and at December 31, 2020. This information must be disclosed to make the Registration Statement not

materially misleading to CenterState stockholders and provide stockholders with full and relevant information in considering how to vote.

53. The omission of the above-referenced material information renders the Registration Statement false and misleading.

54. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

**CLAIMS FOR RELIEF**

**COUNT I**

**(AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)**

55. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

57. Defendants issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

58. In so doing, Defendants made untrue statements of fact and/or omitted material facts

necessary to make the statements made not misleading. By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders as required.

59. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Registration Statement. Defendants were also negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.

60. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

## COUNT II

### (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

61. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

62. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or

intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

63. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

65. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

66. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

67. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

68. Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that Defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: March 27, 2020

**MOORE KUEHN, PLLC**

*/s/Justin Kuehn*
Justin A. Kuehn
Fletcher W. Moore
30 Wall Street, 8th floor
New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com

*Attorneys for Plaintiff*